# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**DEBORAH A. DULMES,**

        **Plaintiff,**

        **V.**                                        Case No. 10-C-548

**MICHAEL J. ASTRUE,**

        **Defendant.**

---

## DECISION AND ORDER REVERSING THE DECISION OF THE COMMISSIONER AND REMANDING CASE

---

**I. FACTS AND HISTORY**

      Deborah A. Dulmes ("Dulmes") last worked in 1999 as a housekeeper at a nursing home. (Tr. 19.) After working there for 9 years, she felt she had to stop because she could no longer handle the physical demands of the job. (Tr. 19-20.) Initially, Dulmes suffered from muscle pain and flu-like symptoms but by 2003 was also experiencing numbness in her feet, eventually resulting in a diagnosis of fibromyalgia. (Tr. 20-21.) Dulmes was also diagnosed with certain back problems and these problems affected nerves which led to numbness in her mouth. (Tr. 21-22.) Dulmes continued to regularly suffer from severe pain as a result of fibromyalgia, leading to treatment by a pain specialist who prescribed anti-inflammatory medications and physical therapy. (Tr. 236-37.)

      Dulmes filed an application for disability insurance benefits alleging a disability onset of April 2, 1999. (Tr. 56.) The claim was denied initially on April 10, 2007 and upon reconsideration on September 5, 2007. (Tr. 56.) Dulmes requested a hearing on November 5, 2007, and a hearing was held nearly two years later on October 14, 2009 before and administrative law judge ("ALJ").

(Tr. 56.) Dulmes appeared at this hearing with counsel, where she testified along with her husband and a vocational expert ("VE"). (Tr. 13-50, 56.) The ALJ issued his unfavorable decision on November 4, 2009. (Tr. 56-63.)

The ALJ determined that Dulmes' fibromyalgia was a severe impairment and concluded that she had the residual functional capacity for unskilled sedentary work with additional limitations. (Tr. 58-60.) Because there were numerous jobs in the national economy that Dulmes could have performed prior to when she was last insured on March 31, 2004, the ALJ concluded she was not disabled. (Tr. 56-63.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review on June 18, 2010. (Tr. 1-3.)

The present action was filed on July 2, 2010. (Docket No. 1.) This matter was randomly assigned to this court, and all parties have consented to the full jurisdiction of a magistrate judge. (Docket Nos. 4, 5.) The plaintiff filed her initial brief on December 3, 2010, (Docket No. 12), the Commissioner responded on January 18, 2011, (Docket No. 17), and the plaintiff replied on February 7, 2011, (Docket No. 19).

With respect to the plaintiff's reply, this filing was untimely. Both parties in this case requested extensions of time, (Docket Nos. 10, 13), and the deadline for the plaintiff to file her reply was set for February 1, 2011. Without any explanation or acknowledgment of its untimeliness, the plaintiff filed her brief a week late on February 7, 2011. This is not the first time counsel for the plaintiff has failed to comply with the court's orders in this case. On August 16, 2010, the court denied the plaintiff's motion to proceed in forma pauperis without prejudice because it was wholly unsupported. (Docket No. 6.) The court ordered the plaintiff to either pay the filing fee or to submit an appropriate motion to proceed in forma pauperis within 14 days. (Docket No. 6.) Nothing happened. On September 7, 2010, the court ordered the plaintiff to show cause why sanctions should not be imposed for failure to comply with the court's order. (Docket No. 7.) Instead of

responding as ordered, the plaintiff simply paid the filing fee. Although not complying with the court's order to show cause, the court declined to address the matter further and the case proceeded. Now, counsel has again ignored this court's direct order, (see Docket No. 15). Moreover, in direct contravention with General Local Rule 5(a)(4) and this court's Special Instructions for Litigants, this filing was not double-spaced.

Based upon the circumstances of this case, it appears that the imposition of monetary sanctions upon plaintiff's counsel would be appropriate. However, rather than ordering the plaintiff's counsel to show cause why sanctions should not be imposed because the reply was not received by the deadline set by the court, the reply is hereby stricken and court shall not consider it in its resolution of this matter. Even though monetary sanctions are not imposed, the court cautions counsel that continuing to handle cases in this lax manner will be surely result in stiff sanctions in the future.

## II. STANDARD OF REVIEW: SUBSTANTIAL EVIDENCE

In addressing the issues raised by the claimant, the court is limited to determining whether the ALJ's factual findings are supported by "substantial evidence." Young v. Barnhart, 362 F.3d 995, 1001 (7th Cir. 2004). The court may not re-weigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute its own judgment for that of the Commissioner. Id.; Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).

The substantial evidence burden is satisfied when the evidence is such that a reasonable mind might accept it as adequate to support a conclusion. Williams v. Apfel, 179 F.3d 1066, 1071 (7th Cir. 1999). Although a mere scintilla of proof will not suffice, Butera v. Apfel, 173 F.3d 1049, 1055 (7th Cir. 1999), substantial evidence may be something less than the greater weight or preponderance of the evidence, Young v. Sullivan, 957 F.2d 386, 388 (7th Cir. 1992). If the ALJ rejects uncontradicted evidence, reasoning for that rejection must be clearly articulated. Id.; Walker

v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). If the ALJ's decision rests on the credibility determination, this court will overturn that determination only if it is patently wrong. Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000). Special deference is appropriate because the ALJ is in the best position to see and hear the witness and to determine credibility. Id. at 435.

When the Commissioner denies social security benefits, the ALJ is required to "build an accurate and logical bridge from the evidence to [his] conclusions" so that a reviewing court may afford the claimant meaningful review of the SSA's "ultimate findings." Blakes v. Barnhart, 331 F.3d 565, 569 (7th Cir. 2003) (citing Scott v. Barnhart, 297 F.3d 589, 595 (7th Cir. 2002)); Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002). Further, the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review." Steele, 290 F.3d at 940. Finally, if the ALJ committed an error of law, this court may reverse the Commissioner's decision, regardless of whether it is supported by substantial evidence. Pugh v. Bowen, 870 F.2d 1271, 1274 (7th Cir. 1989).

Simply stated, this court's role is not to look at all the evidence again and make an independent determination of whether the claimant is disabled. This court's role is very limited. If the ALJ complied with the rules and there is a good reason for his or her decision, even if it is a decision that the claimant strongly disagrees with, the court will not undo that decision.

## III. DETERMINING DISABILITY: A FIVE-STEP ANALYSIS

A person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In determining whether the claimant was disabled, the ALJ applied the following five step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairments meets or medically equals one of the

4

impairments listed in 20 C.F.R. § 404, Subpart P, Appx. 1 ("Appendix 1"); (4) whether the claimant is unable to perform past relevant work; and (5) whether the claimant is incapable of performing work in the national economy. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920; Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step, or on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, ends the inquiry and leads to a determination that a claimant is not disabled. Zurowski v. Halter, 245 F.3d 881, 885-86 (7th Cir. 2001) (citing Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985)). The claimant bears the burden of proof in the first four steps. Young v. Secretary of Health & Human Servs., 957 F.2d 386, 389 (7th Cir. 1992). If the claimant sustains that burden, at Step 5, the burden shifts to the Commissioner. Id. The ALJ is required to carefully consider and explain in his or her decision the weight given to the opinions of state agency doctors and consultants. SSR 96-6p.

## IV. ANALYSIS

The plaintiff contends that the ALJ committed three errors of law in this case: (1) he failed to give appropriate weight to the conclusions of the plaintiff's treating physician; (2) the ALJ erred when he relied upon Medical-Vocational Rule 201.21 of 20 C.F.R. Part 404, Subpart P, Appendix 2 (otherwise known as "the Grid") because the plaintiff had not graduated high school; and (3) the ALJ failed to include certain of the plaintiff's limitations in the hypothetical he presented to the vocational expert ("VE"). The court shall consider each of these arguments in turn.

### A. Treating Physician

Doctor Steven Santino was the medical professional who appears to have had the most active and regular role in the treatment of the plaintiff's fibromyalgia. In July 2008, Dr. Santino completed a residual functional capacity assessment wherein he stated that the plaintiff was capable of standing or walking less than 2 hours and sitting for 4 hours in an 8-hour day. (Tr. 453.) He

5

further stated that the plaintiff would need to be able to shift at will from sitting, standing, or walking, will need to have her legs elevated about 25% of the time, will need to take approximately 2 unscheduled breaks of about 15 minutes each per workday, (Tr. 453), and would miss work on average of about 3 days per month, (Tr. 450).

The ALJ found Dr. Santino's conclusions regarding the plaintiff's ability to sit, stand, and walk to be inconsistent with the plaintiff's own reported statements. In addition to noting that Dr. Santino's conclusions were inconsistent with the plaintiff's own reports, the ALJ noted that his report was prepared 5 years after the date the plaintiff was last insured. (Tr. 61.) Nonetheless, the ALJ concluded that the doctor's other conclusions were consistent with the medical evidence and therefore "worthy of reasonable weight." (Tr. 61.)

The plaintiff contends that affording the Dr. Santino's opinion "reasonable weight" was error and instead should have been afforded controlling weight.

> An ALJ must give "controlling weight" to a treating source's opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." 20 C.F.R. § 404.1527(d)(2); see also Schaaf v. Astrue, 602 F.3d 869, 875 (7th Cir. 2010) (per curiam); Poupore v. Astrue, 566 F.3d 303, 307 (2d Cir. 2009) (per curiam); Ketelboeter v. Astrue, 550 F.3d 620, 625 (7th Cir. 2008). And whenever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision. 20 C.F.R. § 404.1527(d)(2); Campbell v. Astrue, 627 F.3d 299, 2010 WL 4923566, at *6 (7th Cir. 2010); Cowan v. Astrue, 552 F.3d 1182, 1188 (10th Cir. 2008); Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1199 (9th Cir. 2008); Schmidt v. Astrue, 496 F.3d 833, 842 (7th Cir. 2007).

Punzio v. Astrue, 2011 U.S. App. LEXIS 1181, 16-17 (7th Cir. Ill. Jan. 21, 2011).

In an effort to support her position that Dr. Santino's assessment should have been afforded controlling weight she states:

> Dr. Santino has treated Dulmes since 2003. Dulmes was referred to Dr. Santino because he is a pain specialist and in the best position to treat her pain. Dr. Santino is the one doctor who managed Dulmes's care over the last five years and is in the best medical position to determine how her fibromyalgia limits her ability to work.

(Docket No. 12 at 8.)

6

These are merely the factors considered at the first step of the determination of whether a treating source may be entitled to controlling weight. See 20 C.F.R. § 404.1527(d)(2). It does not appear that the ALJ found that Dr. Santino could not be entitled to controlling weight due to an insufficient treatment relationship or specialization. Thus, plaintiff's argument in this regard is not in dispute. Rather, the ALJ did not afford controlling weight to Dr. Santino's opinion because he found that it was "inconsistent with other substantial evidence in [the] case record," 20 C.F.R. § 404.1527(d)(2), and the additional factor that Dr. Santino's opinion was offered more than 5 years after the date the plaintiff was last insured and thus was of little probative value as to her ability to work during the period of insurability, see 20 C.F.R. § 404.1527(d)(6).

Having reviewed the plaintiff's activity questionnaire, (Tr. 133-37), the court concludes it was reasonable for the ALJ to characterize the limitations cited by Dr. Santino as "inconsistent with the claimant's own statements." On February 22, 2007, the plaintiff completed a questionnaire regarding her activities and on it she stated she was able to stand or sit of 1½ hours and walk for 1 hour. (Tr. 134.) In a day (apparently a 24-hour day, not an 8-hour workday), the plaintiff reported she was able to stand or sit for 6 hours and walk for 4. (Tr. 134.) She reported she did daily house cleaning, although she is slower at this than she used to be and she needs to take many rest breaks. (Tr. 133, 136.) She stated that vacuuming and cleaning windows were the most difficult chores for her and that she required her husband's help to do more difficult jobs. (Tr. 133, 136.) Moreover, the substantial lag between the date last insured and the date of Dr. Santino's evaluation is a relevant factor to consider when assessing whether to afford a treating medical source's opinion controlling weight.

Thus, the reasons articulated by the ALJ provide an appropriate basis for his decision to not afford Dr. Santino controlling weight. Finding that the ALJ appropriately supported his conclusion, the court finds no error in the ALJ's decision to not afford Dr. Santino's assessment controlling

7

weight. Although not entitled to controlling weight, based upon the reasons offered, Dr. Santino's assessment could not be entirely ignored. Thus, the ALJ proceeded appropriately by not entirely discounting Dr. Santino's report and instead concluding it was "worthy of reasonable weight." (Tr. 61.)

### B. Plaintiff's Educational Status

The ALJ relied, in part, upon the Grid, and specifically section 201.21, a provision applicable to individuals who have at least a high school education. Because the plaintiff never graduated high school, it was obviously inappropriate to rely upon this provision. The plaintiff contends that the ALJ should have relied upon section 201.18. (Docket No. 12 at 9.) The plaintiff is correct in this regard. However, this error clearly does not require remand because section 201.18 leads to the same result of "Not disabled" as does 201.21. Therefore, although error, this error was clearly harmless.

### C. Limitations Included in Hypothetical

The plaintiff also had nonexertional limitations and therefore analysis of the Grid was merely a first step to determine whether a finding of disability was appropriate. 20 C.F.R. Part 404, Subpart P, Appendix 2 section 200(e)(2). Upon finding that the plaintiff was not disabled under the Grid, it was then incumbent upon the ALJ to present the plaintiff's nonexertional limitations to a VE to determine whether the plaintiff can perform a significant number of jobs. Villano v. Astrue, 556 F.3d 558, 564 (7th Cir. 2009) (citing 20 C.F.R. § 404.1569a(d)).

The ALJ did consult a VE but the plaintiff contends that the ALJ erred by failing to include all of the plaintiff's limitations in the hypotheticals presented to the VE. Specifically, the plaintiff contends that the ALJ erred by failing to conclude the limitation that she elevate her legs about 25% of the day, and that she would need to take 2 unscheduled 15-minute breaks during a workday.

(Docket No. 12 at 8.) The Commissioner responds that "[t]he ALJ reasonably found that Plaintiff had no greater limitations that those he posed to the vocational expert." (Docket No. 17 at 9.)

The court disagrees with the Commissioner. The ALJ stated he found only two aspects of Dr. Santino's assessment inconsistent with the other evidence in the record. First, he concluded that the plaintiff was not limited to sitting for two hours and standing for 30 minutes as Dr. Santino opined. (Tr. 61.) Second, the ALJ rejected Dr. Santino's conclusion that the plaintiff would be absent 3 times per month. (Tr. 61.) As for Dr. Santino's other opinions, the ALJ stated that he "finds the remainder of Dr. Santino's opinions to be consistent with the medical evidence and worthy of reasonable weight." (Tr. 61.)

The ALJ's conclusion suggests that he determined that the additional limitations found by Dr. Santino credible and therefore he was obligated to consider these in the hypotheticals he presented to the VE. Schmidt v. Astrue, 496 F.3d 833, 846 (7th Cir. 2007) ("[T]he ALJ is required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible."). The hypotheticals presented to the VE clearly omitted the limitations found by Dr. Santino regarding unscheduled breaks or elevating her legs. (Tr. 39-42.)

Therefore, the court concludes remand is necessary. Upon remand, the ALJ must either appropriately articulate a basis for excluding these limitations or present them in a hypothetical to a VE.

**V. CONCLUSION**

The ALJ appropriately considered the report of the plaintiff's treating physician. Because aspects of this report were inconsistent with the plaintiff's own reports and was submitted years after the date the plaintiff was last insured, the ALJ was not required to afford this report controlling weight. However, because the ALJ did not reject all of the treating physician's conclusions and

9

instead appeared to find these conclusions credible, the ALJ was obligated to include these in the hypotheticals he presented to the VE. Therefore, remand is necessary.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **reversed** and this matter **remanded** for further proceedings in accordance with this decision. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that the plaintiff's reply, (Docket No. 19), is **stricken**.

Dated at Milwaukee, Wisconsin this 4th day of May, 2011.

s/AARON E. GOODSTEIN<br>U.S. Magistrate Judge